## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

THOMAS MANLEY,
      Plaintiff,

vs.

DEPARTMENT OF THE NAVY,
      Defendant.

Civil Action No. 1:07-cv-721

**ORDER**
(Hogan, M.J.)

This case involves the Department of the Navy's denial of Mr. Manley's request for a

waiver of fees associated with a Freedom of Information Act (FOIA) request seeking documents

and records concerning the United States Naval Academy's Honor Concept. Both parties have

filed cross-motions for summary judgment (Docs. 13, 14) and opposing memoranda. (Docs. 15,

16). The parties have consented to disposition of the above-captioned matter by the undersigned

United States Magistrate Judge. (Doc. 9). For the reasons that follow, plaintiff's motion for

summary judgment is granted and defendant's motion for summary judgment is denied.


### I. Procedural Background

Plaintiff submitted an FOIA request to the United States Naval Academy (USNA)

seeking certain documents and records relating to the operation and implementation of the United

States Naval Academy's Honor Concept.[1] The documents sought included records relating,

---

[1]The Honor Concept is considered the "minimum standard of honor for a midshipman" at the Naval
Academy. See http://www.cs.usna.edu/academics/ COMDTMIDNINST%201610.3F.PDF. All midshipmen are
subject to the Honor Concept and those found in violation of the Honor Concept by their peers may be separated
from the Naval Academy. See http://www.usna.edu/about. The tenets and procedures of the Honor Concept of the
United States Naval Academy are set forth at USNAINST 1610.3F, found at http://www.cs.usna.edu/academics/
COMDTMIDNINST%201610.3F.PDF. As stated therein, "The Honor Concept represents the minimum standard
for midshipmen. Honor, personal integrity, and loyalty to the service, its customs and its traditions, are fundamental

evidencing or documenting the counseling, investigation or disposition of alleged violations of

the Honor Concept at the Naval Academy; the means utilized to educate and apprize the United

States Naval Academy-community regarding the Honor Concept; statistical records and indexes

relating to alleged violations of the Honor Concept; and documents granting, providing or

authorizing the granting of immunity or other comparable benefit or protection to any

midshipman for any alleged or potential violations of the Honor Concept. (Doc. 6, AR 17-19).[2]

Essentially, plaintiff sought "specific records that document [the] actual processing and

implementation of the Honor Concept, *i.e.*, objective source documents relative to the Concept's

operation" at the United States Naval Academy. (Doc. 14 at 8). Plaintiff also sought a waiver of

the statutorily mandated fees associated with the Navy's processing of his FOIA request, a sum

estimated to be approximately $2,864. The request was denied initially and on appeal to the

Judge Advocate General of the Navy (JAG). Plaintiff then sought judicial review of the Navy's

decision to deny his application for a waiver of the statutorily mandated processing fee under 5

U.S.C. § 552(a)(4)(A)(iii).


## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the court

demonstrates that there is no genuine issue as to any material fact and that the movant is entitled

characteristics essential to a successful naval officer. Midshipmen unable to conduct themselves in a manner
indicating the highest standards of honesty and integrity may not be fit to hold a commission in the Naval Service
and may jeopardize their privilege of being a member of the Brigade of Midshipmen. The offenses of lying, cheating,
and stealing are intolerable in the Brigade, and may subject a perpetrator to separation from the Naval Academy."
*Id.*, at .0103

[2]The timeframe sought for the records is from August 1, 2005 through the date of the initial FOIA request.
(Doc. 6, AR 17-19).

2

to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v.*

3

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Discussion

The Freedom of Information Act was designed to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978)). Under the FOIA, the Court reviews the denial of plaintiff's waiver request de novo.[3]  *See* 5 U.S.C. § 552(a)(4)(A)(vii).[4]  Judicial review is limited to the administrative record before the agency. *Id.; see also Rossotti,* 326 F.3d at 1311;  *McClellan Ecological Seepage Situation v. Carlucci,* 835 F.2d 1282, 1284 (9th Cir. 1987).  The administrative record "consists of, inter alia, the initial FOIA request, the agency's response, and any subsequent materials related to the administrative appeal." *Forest Guardians v. Dept. of the Interior*, 416 F.3d 1173, 1177 (10th Cir. 2005) (citing *Larson v. CIA,* 843 F.2d 1481, 1483 (D.C. Cir. 1988)).  As a result, the Court may not consider reasons not advanced by the agency in the administrative denial decision. *See Friends of the Coast Fork v. United States Dept. of the Interior,* 110 F.3d 53, 55 (9th Cir. 1997); *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 511-12 (9th Cir. 1997) (citing Industrial

---

[3]Congress amended the statute governing FOIA fee waivers in 1986 to change the standard of review from the deferential arbitrary-and-capricious standard to the de novo standard. *See* FOIA Reform Act of 1986, Pub. L. No. 99-570, § 1804(b)(1), 100 Stat. 3207-50; *Larson v. CIA*, 843 F.2d 1481, 1482-83 (D.C. Cir. 1988).

[4]Title 5 U.S.C. § 552(a)(4)(A)(vii) provides, in its entirety: "In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo: *Provided,* That the court's review of the matter shall be limited to the record before the agency." (italics in original).

4

*Union Dept. v. American Petroleum Inst.,* 448 U.S. 607, 631 n. 31 (1980)); *Judicial Watch, Inc. v. General Services Admin.*, 2000 WL 35538030, *4 (D.D.C. 2000). "[T]he agency must stand on whatever reasons for denial it gave in the administrative proceeding. If those reasons are inadequate, and if the requesters meet their burden then a full fee waiver is in order." *Coast Fork,* 110 F.3d at 55.

A waiver or reduction of fees is warranted under the FOIA if the requester shows that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). "[F]ee waiver requests must be made with reasonable specificity . . . and based on more than conclusory allegations." *Judicial Watch, Inc. v. Rossotti,* 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal quotation marks and citation omitted). *See also Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1177-78 (10th Cir. 2005). The Court notes that the FOIA was amended to ensure that it be "'liberally construed in favor of waivers for noncommercial requesters.'" *McClellan Ecological Seepage Situation v. Carlucci,* 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. 27,190 (1986) (Sen. Leahy)). *See also Forest Guardians,* 416 F.3d at 1178; *Rossotti*, 326 F.3d at 1312.

Since the Department of the Navy does not dispute that the requested documents are not in plaintiff's commercial interest (AR at 2), the Court's focus is on whether plaintiff satisfies the public interest prong of the statute, *i.e.,* whether "disclosure of the information is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). In determining whether disclosure of the information is in the public interest, the Department of the Navy considers four factors: (1) the subject of the

5

request; (2) the informative value of the information to be disclosed; (3) the contribution to an understanding of the subject by the general public likely to result from disclosure; and (4) the significance of the contribution to public understanding. 32 C.F.R. § 701.48 (b)-(e); *see Project on Military Procurement v. Department of Navy*, 710 F. Supp. 362, 365 (D.D.C. 1989). *See also Judicial Watch, Inc. v. Dept. of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004); *Rossotti*, 326 F.3d at 1312; *Brunsilius v. U.S. Dept. of Energy*, 514 F. Supp.2d 30, 35 (D.D.C. 2007). The Department's regulations state that the above four factors are not exclusive and that each fee decision must be decided on its own merits. 32 C.F.R. § 701.48(g). "When the element of doubt as to whether to charge or waive the fee cannot be clearly resolved, DON [Department of Navy] activities should rule in favor of the requester." *Id.*

### A. The subject of the requested records.

The first factor, whether the information requested by plaintiff relates to the operations or activities of the government, 32 C.F.R. § 701.48 (b), is met in this case. The administrative reviewer conceded that the Naval Academy documents pertaining to violations of the USNA Honor Concept "may involve, at least collaterally, operations or activities of the DON as it relates to the USNA's policies and practices, and the procedures the USNA uses to investigate and address violations of the USNA Honor Code." (Doc. 6, AR at 3). The administrative reviewer concluded that plaintiff "appears to have satisfied [the] factor" of "the subject of the request." *Id.*

The Navy now argues that both the administrative reviewer and plaintiff misinterpret the first requirement. The Navy contends that not only must plaintiff show that the subject matter of the requested information concern governmental operations and activities, but plaintiff must

6

show "a link between that information and its informative value with respect to specifically identified governmental operations or activities" (Doc. 16 at 2-3), citing *Judicial Watch, Inc. v. Dept. Of Justice*, 122 F. Supp.2d 5, 9 (D.D.C. 2000).

In *Judicial Watch, Inc. v. Dept. Of Justice*, 122 F. Supp.2d 5, the request for fee-waiver was denied because the requester "neither explain[ed] the connection between the information sought and the government's operations, nor identifie[d] the public interest that disclosure of the information would serve." *Id.* at 9. In the instant case, in contrast, plaintiff's appeal to the JAG specifically explained the connection between the Honor Concept documents sought and the operations and mission of the Naval Academy. (Doc. 6, AR at 9-10). The Naval Academy's own publications describe the importance of the Honor Concept as an "educational objective" which is designed to serve "as a basis for each midshipman's conduct at all times and under all conditions, whether professional or personal in nature." (Doc. 6, AR at 9-10, citing the Faculty Handbook of the United States Naval Academy). In addition, plaintiff's appeal letter cites to several reforms undertaken by the Navy in the 1990s to improve the honor system and ethics training at the Naval Academy. These include the appointment by the then-Secretary of the Navy in 1993 of a commission to investigate a widespread cheating scandal and the Honor Concept in general; the creation of the Character Development Division by the Academy; and the creation of the Center for the Study of Professional Military Ethics in 1998 to address issues of ethical importance both within and beyond the confines of the Naval Academy. (Doc. 6, AR 11). Plaintiff's appeal also cites to a graduate thesis on the Honor Concept published on the Naval Academy's website as evidence of the importance of the Honor Concept to the operations or activities of the United States Naval Academy. (Doc. 6, AR 11-14). The publications and reform

7

activities cited by plaintiff show the connection between the Honor Concept documents requested and the importance of the Honor Concept to the educational objectives and operations at the United States Naval Academy. There is nothing in the Navy's denial decision indicating the Navy took exception to plaintiff's reliance on the Navy's publications or actions in supporting his request for a fee waiver; rather, the administrative reviewer determined plaintiff in fact met this first factor. The Navy's post hoc rationalization on judicial review cannot serve as a basis to deny plaintiff's request on this first factor. *Coast Fork,* 110 F.3d at 55. The Court determines that the requested records relate to the operations or activities of the Naval Academy.

### B. The informative value of the information to be disclosed.

The next factor considered is the informative value of the information to be disclosed. 32 C.F.R. § 701.48 (c). The Court must consider whether the disclosure of the information is likely to contribute to an understanding of government operations or activities. *Rossotti,* 326 F.3d at 1314.

The administrative reviewer determined that the information requested would not add any meaningful new information concerning the operations and activities of the Department of Navy and that such information is already in the public domain in the form of media reports and other public documents. (Doc. 6, AR at 3). On judicial review, the Navy asserts that "it remains 'less than obvious' that the general public has any interest in examining any data regarding the Naval Academy's Honor Concept." (Doc. 13 at 9), citing *National Treasury Employees Union v. Griffin,* 811 F.2d 644, 647 (D.D.C. 1987), for the proposition that "[a]ny benefit to the general public that might flow from furnishing the requested information is less than obvious." The Navy also argues that even assuming the public has any interest in the implementation of the

Honor Concept and in the moral development of midshipmen, plaintiff has failed to demonstrate how the requested information would meaningfully advance the public's understanding beyond that which has already been disseminated in the form of publicly available media reports and academic research papers. (Doc. 13 at 9).

Whether the public's interest is "less than obvious" is not the standard to be applied.[5] Rather, the Department's regulations require an assessment of "the substantive contents of a record . . . to determine whether disclosure is meaningful, and shall inform the public on the operations or activities of the DON." 32 C.F.R. § 701.48(c). The extent to which the information already exists in the public domain is relevant in assessing this factor. The regulations provide that "[d]isclosure of duplicative or nearly identical information already existing in the public domain may add no meaningful new information concerning the operations and activities of the DON." *Id.*

Here, plaintiff requested records that serve to objectively document the actual implementation and operation of the Honor Concept at the U.S. Naval Academy–documents that are not readily available to the general public. These include records relating, evidencing or documenting the counseling, investigation or disposition of alleged violations of the Honor Concept at the Naval Academy; the means utilized to educate and apprize the USNA-community regarding the Honor Concept; statistical records and indexes relating to alleged violations of the Honor Concept; and documents granting, providing or authorizing the granting of immunity or other comparable benefit or protection to any midshipman for any alleged or potential violations

---

[5]*Griffin,* cited by the Navy, was a case that applied the pre-1986 FOIA amendment arbitrary and capricious standard of review to the agency's denial of a fee waiver request. 811 F.2d at 647.

9

of the Honor Concept. (Doc. 6, AR 17-19). Plaintiff asserts that the release of this information

will serve to "reveal the manner and standards to which midshipmen are being held *de facto*, as

well as how the Administration at the Naval Academy implements the honor system or the

importance it places upon the honor system." (Doc. 6, AR 11). Plaintiff's appeal letter and

attachments thereto reference news and web journal articles reporting on the laxity of Honor

Code enforcement, grants of immunity or absolute exoneration for potential honor code

violations, and the disparate punishment for Honor Code violations at the Naval Academy, as

well as widespread honor violations at the Air Force Academy. (Doc. 6, AR 10-11, 16-30).

While these media reports are certainly in the public domain, the information plaintiff seeks is

not the personal opinions or anecdotal stories relayed in such reports, but the objective and

substantive information underlying the administration and implementation of the Honor Concept

in practice. The Navy may not rely on its bald assertion that such information is already publicly

available, but must substantiate its assertion in the record, which it has failed to do. *See Citizens*

*for Responsibility and Ethics in Washington v. U.S. Dept. of Health and Human Services*, 481 F.

Supp.2d 99, 111 (D.D.C. 2006) (and cases cited therein).

        Plaintiff also points to reform efforts undertaken by the Navy in the past decade and a half

to better develop ethical and moral training at the Naval Academy, including the creation of a

commission to investigate a widespread cheating scandal and the Honor Concept in general in

1993; the creation of the Character Development Division by the Academy; and the creation of

the Center for the Study of Professional Military Ethics in 1998 to address issues of ethical

importance both within and beyond the confines of the Naval Academy. (Doc. 6, AR 11).

Plaintiff states the records sought "will help the public understand whether such efforts have

                                                10

truly been successful or whether the implementation of the Honor Concept has been manipulated in order to create the perception of success." *Id.* In further support, plaintiff cites to a 2004 master's thesis published on the Naval Academy's website which examined the importance and implementation of the Honor Concept at the Naval Academy, including perceived weaknesses in the honor system at the Academy as having a negative impact on midshipmen's perspective of their moral development. (Doc. 6, AR 11-14). While the thesis examined data obtained from focus groups consisting of first-class midshipmen and was based upon individualized perceptions (Doc. 6, AR 11 n.8 and http://www.usna.edu/IR/htmls/lead/database/cohort7/c07_clark.pdf), the records requested by plaintiff would add substantively to or refute those perceptions with objective data and information. Plaintiff asserts that the underlying factual data concerning the actual implementation of the Honor Concept will help the public better and more fully understand how the Honor Concept actually works and is implemented in practice. Without such data, the public is left with only innuendo, rumor or partial reports as to actual implementation of the Honor Concept from which to draw an informed conclusions. (Doc. 6, AR 14). Plaintiff's explanation is reasonably specific as to how the Honor Concept documents sought would likely contribute to the public's understanding of the Naval Academy's operations or activities. The second factor weighs in favor of a fee waiver.

**C. The contribution to an understanding of the subject by the general public likely to result from disclosure.**

The third factor in determining a fee waiver is whether the information requested will contribute to an understanding of the subject by the general public. The Department's regulations explaining the third factor state, in relevant part:

11

> The key element in determining the applicability of this factor is whether
> disclosure will inform, *or have the potential to inform*, the public rather than
> simply the individual requester or small segment of interested persons. The
> identity of the requester is essential in this situation in order to determine whether
> such requester has the capability and intention to disseminate the information to
> the public. Mere assertions of plans to author a book, researching a particular
> subject, doing doctoral dissertation work, or indigence are insufficient without
> demonstrating the capacity to further disclose the information in a manner that
> will be informative to the general public. Requesters should be asked to describe
> their qualifications, the nature of their research, the purpose of the requested
> information, and their intended means of dissemination to the public.

32 C.F.R. § 701.48(d) (emphasis added).

In his appeal, plaintiff asserted he would disseminate the information to the public

"through means of e-mail with individuals throughout the country, internet groups, at meetings of

alumni or others interested in the future and direction of all service academies, as well as

ascertaining the interest of other channels of distribution by offering the data with organizations

concerned with the future of the military (including the Concerned Alumni of the Naval

Academy, a group of alumni and friends of the Naval Academy who have an existing website –

usnaconcernedalumni.org – by which the information can be posted, as well as the Center for

Military Readiness, which, in turn, has its own means of disseminating such information)." (Doc.

6, AR 15). In addition, plaintiff identified a specific newspaper reporter who has requested

copies of the documents responsive to the FOIA request and has stated his willingness to provide

the information to this reporter:

> Earl Kelly, a reporter for the primary local Annapolis newspaper, *The Capital* and
> whose assignments include focusing on issues relating to the Naval Academy . . .
> has expressed an interest and desire to review the responsive documents when
> produced and Mr. Manley is willing to provide responsive records to Mr. Kelly
> for further dissemination and enlightenment of the public of the information
> contained therein.

(Doc. 6, AR 15).  Plaintiff's appeal letter states that *The Capital* is one of a limited number of national newspapers with a special interest in the Naval Academy. (Doc. 6, AR 15).

In ruling against plaintiff on this factor, the administrative reviewer found that plaintiff failed to sufficiently show "how dissemination would be made to the general public nor shown how such disclosure would contribute to the understanding of the public at large, as opposed to a narrow segment of the public.  The narrow segment in this case being primarily the requester and representations by the requester of his willingness to disseminate the information to a limited number of potentially interested persons and groups rather than disclosing the information in a manner that will likely be informative the general public." (Doc. 6, AR 4).

On judicial review, the Navy contends that plaintiff fails to satisfy the third factor because he "has not demonstrated how the various groups to which he would disseminate the requested information make up a 'reasonably broad audience of persons' and not merely a narrow segment of interested persons." (Doc. 13, citing *Judicial Watch, Inc. v. U.S. Dept. Of Justice*, 185 F. Supp.2d 54, 62 (D.D.C. 2002)).  The Navy also argues that plaintiff's unsupported assertion of potential interest from a news reporter from a local newspaper fails to meet the third factor.[6]

The Court cannot agree with the Navy's assertion that plaintiff has failed to demonstrate that the requested information would be widely distributed.  The Navy's argument is premised on the assumption that the information must be disseminated to the public-at-large before a waiver is appropriate.  However, "[i]nformation need not actually reach a broad cross-section of the

---

[6]The Court declines to consider the Navy's arguments in its memorandum in opposition that the volume of information sought by plaintiff is so great as to be impractical to distribute by electronic means, and that plaintiff does not have the qualifications to synthesize or effectively convey the information to the public. (Doc. 16 at 4). These bases for denial were not raised below during the administrative review process. *Coast Fork*, 110 F.3d at 55. Moreover, the Navy has provided no support for these assertions.

public in order to benefit the public at large." *Carney v. Department of Justice*, 19 F.3d 807, 815

(2d Cir.), *cert. denied*, 513 U.S. 823 (1994). *See also Judicial Watch, Inc. v. General Services*

*Admin.*, 2000 WL 35538030, \*7 (D.D.C. 2000). Courts have rejected the narrow interpretation

urged by the Navy in light of the legislative history of the FOIA which suggests a more focused

group: "A request can qualify for a fee waiver even if the issue is not of interest to the public-at-

large. Public understanding is enhanced when information is disclosed to the subset of the public

most interested, concerned, or affected by a particular action or matter." 32 Cong. Rec. S14,270-

01 (daily ed. Sept. 30, 1986) (comments of Senator Leahy). For example, in *Carney v.*

*Department of Justice*, 19 F.3d 807 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994), the Second

Circuit rejected as "not realistic" the position that a requester was required to disseminate the

information to "a large cross-section of the public." *Id.* at 814. "The relevant inquiry . . . is

whether the requester will disseminate the disclosed records to a reasonably broad audience of

persons interested in the subject." *Carney*, 19 F.3d at 815 (finding sufficiently "public" that a

doctoral student in political science planned to publish a dissertation and write scholarly articles;

while usually not reaching a general audience, the dissertation would enlighten interested

scholars and be of great benefit to the public at large). Likewise, the court in *Community Legal*

*Services, Inc. v. U.S. Dept. of Housing and Urban Development*, 405 F. Supp.2d 553 (E.D. Pa.

2005), determined that while the Legal Services work was unlikely to reach a very general

audience, there was nevertheless a segment of the public interested in its work, to wit, a

reasonably large segment of Philadelphia's low- and moderate-income families. *Id.* at 556 -557.

In other words, the relevant issue is whether "the requester will disseminate the disclosed records

to a reasonably broad audience *of persons interested in the subject*." Carney, 19 F.3d at 815

**14**

(emphasis added).

Plaintiff has identified a reasonably broad audience of interested persons, beyond himself, who are concerned and focused on the administration and implementation of the Naval Academy's Honor Concept. Plaintiff has also adequately and credibly explained his planned methods of disseminating this information to the public. As noted by the court in *D.C. Technical Assistance Organization, Inc. v. U.S. Department of Housing and Urban Development,* 85 F. Supp.2d 46, 49 (D.D.C. 2000), "[i]n this Information Age, technology has made it possible for almost anyone to fulfill this requirement" through mechanisms such as the internet. Through electronic communications to interested individuals, groups, and organizations concerned about the service academies, as well as through his commitment to provide the requested information to a particular interested reporter of a publication whose articles focus on the Naval Academy, plaintiff has demonstrated that the disclosure of the requested information will contribute to a greater understanding on the part of the general public. Thus, the third factor weighs in favor of a waiver of the fee.

### D. The significance of the contribution to public understanding.

The fourth factor also favors waiver of the fee. In determining the significance of the contribution of the requested information to public understanding, the Court must "differentiate the relative significance or impact of the disclosure against the current level of public knowledge, or understanding which exists before the disclosure." 32 C.F.R. § 701.48(d). Information that duplicates that already known by the general public does not enhance public understanding. *Id.* On the other hand, if the requested information is "unique in contributing previously unknown facts" then public knowledge is enhanced. *Id.*

In the instant case, plaintiff's administrative appeal was denied as to this factor. The administrative reviewer opined that plaintiff's purported justifications were conclusory and "[t]he manner in which the USNA conducts its investigations into and addresses violations of the Honor Code is already to a large degree in the public domain." (Doc. 6, AR at 4).

The Court disagrees. The media reports and academic thesis cited by plaintiff–information already in the public domain–relay concerns with the inconsistent enforcement and implementation of the Honor Concept at the Naval Academy. As with the second factor discussed above, the information plaintiff has requested does not duplicate that already in the public domain and already known by the general public. Plaintiff seeks the substantive objective data showing how the Honor Concept is administered in practice. While the news stories and reports cited by plaintiff highlight concerns by individual members of the Naval Academy and others with perceived inconsistencies in the application of the Honor Concept, as well as with the lax enforcement of the honor code, these media reports do not reveal the objective and substantive information underlying the administration and implementation of the Honor Concept in practice. The requested information would not duplicate information already in the public domain and would provide the public with the objective foundation from which to assess how the Honor Concept is actually implementation and administered in practice. The Court concludes that plaintiff has met his burden on the fourth factor.

Plaintiff has clearly articulated and supported his request for documents and information under the FOIA, and has shown that disclosure of the requested information is in the public interest. Even if the Court had any doubt as to whether plaintiff satisfied any of the above four factors, any doubt in this matter should be resolved in favor of plaintiff for a waiver of fees. 32

16

C.F.R. § 701.48(g). As such, the Department of the Navy's denial of plaintiff's request for a

waiver of fees associated with plaintiff's March 6, 2007 FOIA request is reversed.


## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's motion for summary judgment is **GRANTED.**


2. Defendant's motion for summary judgment is **DENIED**.


3. The Department of the Navy make the records requested available to plaintiff without fee or
charge within forty-five (45) days of the date of this Order.


4. Plaintiff's request for an award of costs and attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E)
(Doc. 14 at 26) has not been supported by any legal authority. Plaintiff's request is denied
without prejudice to refiling a motion that is supported by legal authority.


Date:  9/19/08

Timothy S. Hogan
United States Magistrate Judge